# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARLA FREIDIG,

            Plaintiff,

   v.

TARGET CORPORATION,

            Defendant.

OPINION and ORDER

17-cv-827-jdp

---

Plaintiff Carla Freidig slipped on a puddle and fell in a store owned by defendant Target Corporation. She says that the fall injured her wrist, and she sued Target under Wisconsin's common law of negligence and Wisconsin's safe-place statute, Wis. Stat. § 101.11. Target moves for summary judgment on both claims. Dkt. 15. Freidig concedes that she cannot support a claim for negligence, so the court will grant Target's motion on that claim, which leaves only her safe-place claim.

Target contends that Freidig's claim under the safe-place statute fails for two reasons: Freidig cannot show that the fall caused her wrist injury; and Target did not have notice of the puddle. The court will deny the motion for summary judgment on Freidig's safe-place claim. Target has security video of the fall itself, which is enough to allow a reasonable jury to find that the fall caused the injury to Freidig's wrist. So causation is a disputed fact that will have to be resolved at trial.

The notice issue is complicated by Target's failure to preserve video showing what happened before the fall itself, despite Target's policy to preserve video of the 20 minutes before and 20 minutes after such an incident. A Target employee had walked near the area 10

to 15 minutes before the fall, and she gave a statement that she was not aware of anyone else being in the area before the fall. The lost video might have confirmed the employee's statement, which suggests that the puddle was there long enough to put Target on notice of the potential hazard. The court concludes that Target had a duty to preserve the video recording of the lead-up to Freidig's fall and that Freidig was prejudiced by Target's failure to do so. As a remedy under Rule 37(e)(1), the court will deem Raemisch's statement that she was the last person to walk through the area before Freidig to be undisputed for the purposes of summary judgment. Based on this statement, a reasonable jury could conclude that the puddle was present long enough to give Target constructive notice of the hazard.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

On July 2, 2016, Carla Freidig was walking through an empty checkout lane at a Target store. Freidig slipped on a puddle and fell on her knees. While falling, she reached out with her left hand and braced herself on the checkout counter.

After the fall, Target employees came to help Freidig. She had pain in both of her knees and in her left toes. She did not report any other pain at that time. Target employees gave Freidig ice for her knees and toes. An employee inspected the area where Freidig fell and found a puddle of clear liquid that was about the size of a basketball. Dkt. 29, ¶ 12. Freidig filled out a guest incident report that said she hurt her knees and toes because she slipped on a puddle. Dkt. 17-3.

Target investigated the accident and took a formal, recorded statement from Sarah Raemisch, a Target employee. Dkt. 17-4. Raemisch said she had walked through that area 10

to 15 minutes prior to Freidig's fall. She did not notice any liquid on the floor, but she only "sometimes" looks for spills and hazards. *Id.* at 3. She said that "to [her] knowledge," she was the last person to walk through the area before Freidig. *Id*. She was facing away from the checkout lane at the time of Freidig's fall. *See id.* at 1 ("when I heard it, it was like a loud kind of like scream . . . I turned around and she was kneeling").

Freidig's slip and fall were captured on Target's security camera. Target has a policy to preserve video recording of accidents in its stores, including from 20 minutes before the accident to 20 minutes after. But for reasons unexplained by either side, Target preserved video beginning only six seconds before Freidig's accident. So the recording does not show Raemisch's walk through the area or show how the puddle was formed. Recording that is not preserved is overwritten after 30 days, so the recording of the lead-up to Freidig's fall is gone for good. Dkt. 23-1, at 7.

Freidig went from the Target store to an urgent care clinic for the pain in her knees and toes. She did not complain about any other injuries during her visit. Freidig received a brace for one knee and was told that if she did not recover in a few days she should make a follow-up appointment with her family practice doctor. Freidig's knee improved, and she did not make a follow-up appointment nor seek any other treatment for the knee injury.

One or two weeks later, Freidig went to Door County for a vacation.[1] While there, she noticed pain in her left wrist for the first time. Freidig self-treated the pain by purchasing a wrist splint at a pharmacy. After Freidig returned from Door County, she made a doctor's

---

[1] The parties say that Freidig went to Door County in "mid-July." Dkt. ¶ 54. During her deposition, Freidig testified that she could remember only that the trip was after the week of July 4. Dkt. 19 (Freidig Dep. 75:20–24, 77:6–19).

appointment for September 1. For the rest of July and August, Freidig continued wearing the wrist brace and continued to feel pain when she exerted herself. After the September 1 appointment, Freidig received treatment for wrist pain, culminating with surgery in February 2017. No doctor rendered an opinion as to whether the July 2 fall caused the wrist injury.

Freidig exercises about six times per week, often by following a video called "Insanity by Beachbody." The Insanity workout includes moves such as burpees (an exercise where the person places her hands on the ground, kicks her feet out and back in, and then stands up) that put strain on Freidig's wrists. Freidig testified that she did "some sort of exercise" between the day of the fall and her trip to Door County, Dkt. 31, ¶ 55, but she could not remember if she specifically did the Insanity workout. Dkt. 19 (Freidig Dep. 79:2–4). Freidig then brought the Insanity video with her to Door County, *Id.* at 78:6–17, but she was unable to perform the Insanity workout because of her wrist pain. *Id.* at 82:15–18.

ANALYSIS

A claim under the safe-place statute has three elements: (1) there was an unsafe condition; (2) the unsafe condition caused the plaintiff's injury; and (3) the defendant had either actual or constructive notice of the unsafe condition before the injury occurred. *Hofflander v. St. Catherine's Hosp., Inc.*, 2003 WI 77, ¶ 89, 262 Wis. 2d 539, 664 N.W.2d 545.

Target challenges Freidig's safe-place claim on the last two elements. Target contends that Freidig needs expert testimony to show that the fall caused her wrist injury. And Target contends that Freidig cannot show that Target had actual or constructive notice of the puddle that Freidig slipped on. The notice question is heavily intertwined with Freidig's motion for relief under Rule 37(e).

4

A. **Standard at summary judgment**

Summary judgment is appropriate only if there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment will not be granted unless "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

B. **Causation**

Target contends that without a medical expert, Freidig cannot show that her wrist injury was caused by her slip and fall at Target, rather than her exercise routine. But the court is not persuaded that expert testimony is necessary in this case, and viewing the evidence in the light most favorable to Freidig, it concludes that a reasonable juror could find that Freidig's slip and fall caused her wrist injury.

"The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in contributing to the result." *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 267 N.W.2d 652, 654 (1978) (citations omitted); *see also Hofflander*, 2003 WI 77, ¶ 96 ("The safe place statute merely affects the level of one's duty of care; it does not alter the analysis of causation."). There may be more than one substantial causative factor in any given case, *Soderlund v. Alton*, 160 Wis. 2d 825, 467 N.W.2d 144, 147 (Ct. App. 1991), and a plaintiff needs to show only that a defendant's conduct was one of the factors. *Schnabl v. Ford Motor Co.*, 54 Wis.2d 345, 195 N.W.2d 602, 607 (1972). A plaintiff does not need to rule out every alternative cause.

5

Expert testimony may be required to prove causation when the issue "involves technical, scientific or medical matters which are beyond the common knowledge of experience of jurors." *City of Cedarburg Light and Water Comm'n v. Allis-Chalmers Mfg. Co.*, 33 Wis.2d 560, 149 N.W.2d 661, 662 (1967). But the Wisconsin Supreme court has warned that "the requirement of expert testimony is an extraordinary one" and "not to be taken lightly." *State v. Kandutsch*, 2011 WI 78, ¶ 28, 336 Wis. 2d 478, 799 N.W.2d 865 (citing *Racine Cnty. v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶ 28, 323 Wis.2d 682, 781 N.W.2d 88). Expert testimony is required only when the underlying issue is so esoteric or complex that it falls outside "the realm of the ordinary experience of mankind." *Id.* ¶ 28 (internal quotations omitted). Expert testimony may be useful in a given case, but that does not mean it is required. *Cf Lindeman v. Mt. Olympus Enterprises, Inc.*, No. 14-cv-435, 2015 WL 4772925, at *3 (W.D. Wis. Aug. 12, 2015) (collecting cases where Wisconsin courts have declined to require expert testimony).

Freidig's claim could certainly be strengthened by expert testimony explaining her injury, but her accident is well within the common experience of jurors. Freidig fell and used her left hand to brace herself, and she later developed a problem in her left wrist that required surgery. Based on the video of Freidig's fall, a reasonable juror could conclude that Freidig injured her wrist while bracing herself.

Target contends that it is equally likely that Freidig injured her wrist while exercising, and therefore this case is controlled by *Merco Distributing Corp.*, 267 N.W.2d at 655. In *Merco Distributing*, the court ordered summary judgment for the defendant because there was no evidence upon which the trier of fact could base a reasoned choice between two exclusive and equally plausible causes for an injury. That is not the case here. The two proposed causes of Freidig's injury are not necessarily exclusive; if Freidig hurt herself exercising, it may have been

because the exercise aggravated her injury from the fall. In that case, Target would still be liable. *See Tanner v. Shoupe*, 228 Wis. 2d 357, 596 N.W.2d 805, 812 (Ct. App. 1999) (the alleged cause of the injury "need not be the sole factor or the primary factor, only a substantial factor.") (internal quotations omitted). And unlike the plaintiff in *Merco*, Freidig has adduced evidence that a reasonable juror could rely upon to find causation—a video that shows Freidig fall and put pressure on her wrist.

Furthermore, the parties genuinely dispute whether Freidig even performed exercises that put strain on her wrist. Freidig testified that she works out six days per week, that she usually does the Insanity workout, and that she did some exercise prior to her Door County vacation. Target interprets this testimony to mean that Freidig must have done the Insanity workout prior to her trip to Door County. But Freidig also testified that she sometimes does different types of workouts in addition to the Insanity workout. Dkt. 19 (Freidig Dep. 78:18–22). She said that she could not recall whether she did the Insanity workout during the relevant time period, *id.* at 79:2–4, and that she may have instead done a spinning bike workout or something else. *Id.* at 82:9–14.

What kind of exercises Freidig did boils down to credibility. The jury will have to decide whether it is credible that although Freidig did the Insanity workout on a regular basis, she did not do the Insanity workout during the one or two weeks following her slip and fall. Because credibility issues cannot be decided at summary judgment, *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014), the court cannot say as a matter of law that Freidig performed exercises that put strain on her wrist.[2]

---

[2] Target invokes the sham affidavit rule to argue that the court should disregard deposition testimony that contradicts Target's position. Dkt. 31, ¶ 49 (citing *Darnell v. Target Stores*, 16 F.3d 174, 176 (7th Cir. 1994), *overruled in part by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir.

7

Because a reasonable juror could find that Freidig's slip and fall was a substantial factor in causing her wrist injury, the court will deny summary judgment on the issue of causation.

## C. Notice of the hazard

Target contends that Freidig cannot show that it had actual or constructive notice of the puddle. In response, Freidig filed a motion for relief under Rule 37(e), contending that Target failed to take reasonable steps to preserve video of the checkout lane. Freidig argues that if Target had preserved video of the lane prior to Freidig's fall, it would have shown whether the puddle was on the floor long enough to give Target constructive notice.

The court concludes that Freidig's ability to show actual or constructive notice is impaired by the loss of the video. The court also concludes that Target had a duty to preserve the video and will grant Freidig relief under Rule 37(e)(1). Based on the record, including the relief granted under Rule 37(e)(1), the court concludes that a reasonable juror could find that Target had constructive notice of the puddle.

### 1. Notice under the safe-place statute

The safe-place statute requires employers and owners of public buildings to "adopt and use methods and processes reasonably adequate" to maintain and repair their buildings and to "do every other thing reasonably necessary to protect the life, health, safety, and welfare of . . . employees and frequenters." Wis. Stat. § 101.11(1). The statute imposes a higher duty than ordinary care on employers and owners of places of employment and public buildings: "to construct, to repair, and to maintain a safe place of employment or public building." *Mair v.*

---

2013)). But that rule does not apply here. Although Freidig's deposition testimony was somewhat muddled, and she sometimes clarified earlier answers, she did not directly contradict herself. And even if she did, the rule does not apply to contradictory statements within a single deposition. *Gullick v. Ott*, 517 F. Supp. 2d 1063, 1075 (W.D. Wis. 2007).

*Trollhaugen Ski Resort*, 2006 WI 61, ¶ 20, 291 Wis. 2d 132, 715 N.W.2d 598 (quoting *Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶ 11, 245 Wis.2d 560, 630 N.W.2d 517). The statute does not make a defendant liable for every injury caused by an unsafe condition in its building. The duty to repair or maintain a building arises only when the defendant has actual or constructive notice of an unsafe condition. *Id.*, ¶ 23; *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 11, 274 Wis.2d 162, 682 N.W.2d 857.

There is no evidence that Target had actual notice of the puddle, but Freidig could prove that Target had constructive notice if she can show that the puddle "existed a long enough time for a reasonably vigilant owner to discover and repair it." *Megal*, 2004 WI 98, ¶ 12. The parties agree that if Freidig cannot adduce any evidence as to how long the puddle was on the floor, then she cannot show that Target had constructive notice. *See Kaufman v. State St. Ltd. Partnership*, 187 Wis.2d 54, 522 N.W.2d 249, 252 (Ct. App. 1994) ("Ordinarily, constructive notice cannot be found when there is no evidence as to the length of time the condition existed."); *Kochanski v. Speedway SuperAmerica, LLC*, 2014 WI 72, ¶ 36, 356 Wis. 2d 1, 850 N.W.2d 160 ("Speculation as to how long the unsafe condition existed and what reasonable inspection would entail are insufficient to establish constructive notice.").

Freidig contends that the puddle was present at least 10 to 15 minutes prior to her fall, when Target's employee, Sarah Raemisch, walked through the area. Freidig construes Raemisch's statement to mean that she was the last person to walk through the area. Because the puddle could not have formed on its own, Freidig argues that it follows that the puddle was present for at least 10 to 15 minutes if no one else was in the area to cause the spill after Raemisch and before Freidig.[3]

---

[3] Freidig also argues that the puddle could have been formed by a leak from "a mechanism

9

But Raemisch's statement does not unequivocally establish that no one was in the area after Raemisch walked through. Raemisch said that "[t]o her knowledge" she was the last person through the area before the fall. Dkt. 17-4, at 3. But Raemisch did not say that she was monitoring the area, or that she even remained in the area throughout those 10 to 15 minutes. And even though Raemisch was nearby when Freidig fell, Raemisch was facing a different direction and had to turn around to see what happened. *Id.* at 1.

Target argues that Freidig has no evidence to corroborate Raemisch's equivocal statement, so she cannot establish that Target had constructive notice of the puddle. The court does not agree. Target is entitled to summary judgment only if it can establish that Freidig does not have evidence sufficient to support a reasonable verdict in her favor. Raemisch's statement is somewhat equivocal, and her credibility might be impeached based on her lack of definitive knowledge of what happened before the fall. But Freidig does not have to prove her case on summary judgment. A reasonable jury could find, based on Raemisch's statement that to her knowledge no one else walked through the area of the fall, that no one did walk through that area.

And there is another factor to consider: the missing video. Freidig contends that if Target had followed its video preservation policy and preserved the 20 minutes of video footage prior to Freidig's accident, then Freidig could have used that footage to show whether any other

---

inside the conveyor belt or a beverage refrigerator." Dkt. 20, at 5. But Freidig does not adduce any evidence that a faulty piece of equipment caused the puddle, so that speculative argument would not forestall summary judgment.

person walked through the area after Raemisch. So Freidig asks for relief under Rule 37(e) for Target's spoliation of the video.

### 2. Prerequisites for relief under Rule 37(e)

In 2015, Rule 37 was amended to create a standard procedure for handling issues regarding a party's failure to preserve electronically stored information (ESI). The amended rule states:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

The text of Rule 37(e) can be broken into several components. The introductory clause lists three prerequisites that the court must find before it may consider relief under subsections (1) or (2). First, the footage "should have been preserved in the anticipation or conduct of litigation." Second, the footage was lost because Target "failed to take reasonable steps to preserve it." Third, the footage "cannot be restored or replaced through additional discovery."

11

The court will consider each requirement.

### a. The footage should have been preserved in anticipation of litigation

Rule 37(e) is based on the common-law duty "to preserve relevant information when litigation is reasonably foreseeable." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. This is an objective standard, viewed from the perspective of Target at the time that the footage was destroyed. *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (party has a duty to preserve only if it "knew, or should have known that litigation was imminent"); *Snider v. Danfoss, LLC*, No. 15 CV 4748, 2017 WL 2973464, at *4 (N.D. Ill. July 12, 2017) (relevance is a prospective standard "from the viewpoint of the party who controls the ESI") (citing *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017)).

When a party is aware of an accident that it knows is likely to cause litigation, it triggers the party's duty to preserve evidence. *See Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 747–48 (8th Cir. 2004) (upholding spoliation sanctions against railroad company that was not aware of actual litigation but knew that litigation was likely following an accident). That is the case here. Freidig filled out a guest incident report that said she was injured after slipping on a puddle in a checkout lane. Dkt. 17-3. This report gave Target notice of potential litigation. Target was well aware that an accident similar to Freidig's could lead to litigation, as reflected in its video retention policies and its formal investigation. Indeed, multiple cases that have held that Target had a duty to preserve video footage under similar circumstances. *See e.g. Decker v. Target Corp.*, No. 116CV00171JNPBCW, 2018 WL 4921534, at *2 (D. Utah Oct. 10, 2018) (Target knew or should have known that litigation was likely when its employees wrote reports about an accident); *Lacey v. Target Corp.*, No. 13 CV 4098 RML, 2015 WL 2254968, at *9 n.4

(E.D.N.Y. May 13, 2015) (plaintiff "complete[d] an accident report at Target . . . This was sufficient to place Target on notice of potential litigation"); *Siciliano v. Target Corp.*, No. 9:14-CV-80459, 2015 WL 11348279, at *4 (S.D. Fla. Apr. 24, 2015) ("Arguably, litigation was reasonably anticipated as early as August 12, 2013, when Plaintiff reported her fall to Target store employees and filled out a Guest Incident Report"); *Simoes v. Target Corp.*, No. 11 CV 2032 DRH WDW, 2013 WL 2948083, at *3 (E.D.N.Y. June 14, 2013) ("The foreseeability of litigation [following an incident] is also reflected in Target's internal policies which obligate the store manager to seek out video surveillance of the incident").

Target also should have been aware that the lead-up to the fall itself was relevant to a potential suit from Freidig. Target has a policy to preserve 20 minutes of footage before and after an accident. Although this policy does not itself create a duty to preserve, it does show that Target is aware, as a general matter, that footage prior to an accident is commonly relevant to litigation. That is especially true in this case because Target's investigator took a statement from Raemisch that she had walked through that area 10 to 15 minutes prior to Freidig's fall and had not noticed a puddle. Dkt. 17-4, at 3. So even without the policy, a reasonable party in Target's position would have realized that footage of those 10 to 15 minutes was relevant to how the puddle was formed.

Target contends that it did not have a duty to preserve because Freidig's attorney did not send a letter notifying Target of litigation. It cites two cases in support of its position, but neither is on point. The first case involves the destruction of video footage that was unrelated to the accident in question or its cause. *See Mahaffey v. Marriot Internat'l Inc.*, 898 F.Supp.2d 54, 59–60 (D.C. 2012) (defendant had duty to preserve evidence concerning plaintiff's injury in a hotel elevator, but defendant could not have reasonably known that video footage from a

13

different part of the hotel was relevant to plaintiff's identification of witnesses). The second case, *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013), held that the United States Coast Guard did not have a duty to preserve call recordings from the night of a boat accident when it had not received any correspondence threatening litigation and it had previously reviewed the recordings and found nothing of interest. *Turner* did not hold that a party's duty to preserve evidence can *never* be triggered by knowledge of an accident alone, only that the party's duty to preserve was not triggered in that case. The foreseeability of litigation is a fact-intensive question that must be assessed on a case-by-case basis. *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) (collecting cases). And the facts of *Turner*—a case involving a failed rescue attempt by the Coast Guard—are simply too different from this case to draw a meaningful analogy.

Target also says that even if it had a duty to preserve, it could not have reasonably known that a recording of more than the fall itself would be relevant to litigation. It argues that if it is required to preserve additional recording beyond the fall itself, then there is no limit to the amount of recording that a plaintiff could demand. But Target overstates the difficulty posed by its duty to preserve. Target does not have a duty to preserve any arbitrary amount of recording that a plaintiff requests. It has a duty to preserve the recording of relevant events. In this case, Target should have known from its internal investigation that, at a minimum, recording from the time of Raemisch's walkthrough to the time of Freidig's fall was relevant to possible litigation. Its own video retention policies would cover the period relevant to this case.

### b. Target did not take reasonable steps to preserve the video

When Target preserved the video of Freidig's fall, it chose to preserve recording of only the fall itself. As a result, the other recording was automatically overwritten a month later. Target did not take any steps to preserve it, reasonable or otherwise.

On this issue, Target rehashes its previous arguments regarding the scope of the recording it was required to preserve. It argues that it took reasonable steps to preserve ESI, because it preserved the recording of the fall itself. But this only raises the question as to why Target chose not to also preserve video that demonstrated how the puddle was formed. *See Lewis v. McLean*, 864 F.3d 556, 565 (7th Cir. 2017) (when prison chose to preserve video of cell extraction, it also should have preserved the recording of the two hours leading up to the cell extraction). Target's decision is especially baffling because it was in direct violation of its preservation policy.

Target also says that the individual employee who preserved the video lacked legal training, and he or she may have reasonably believed that only recording of the fall itself should be preserved. But Target cannot dodge its responsibilities by claiming that its employee was ignorant; Target is responsible for its employees' actions. *See Decker*, 2018 WL 4921534, at *4 (holding that Target was responsible for spoliation by employees who were unaware of preservation policy, because Target failed to train them).

### c. The lost footage cannot be restored or replaced through additional discovery

No backups of the deleted recording exist, nor is there recording from another camera that captured Freidig's fall. Target says that Freidig did not depose Raemisch or other Target employees, and it argues that she could have obtained comparable evidence if she had. But that

is not what Rule 37(e) means by "restore or replace." This provision is referring to digital backups and the likelihood that electronic documents have multiple versions. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("*Because electronically stored information often exists in multiple locations*, loss from one source may often be harmless when substitute information can be found elsewhere.") (emphasis added). The availability of non-electronic evidence is a factor that speaks to prejudice, not whether the lost evidence can be restored.

It's true that Freidig could have engaged in more aggressive discovery, and if she had, she might have developed a stronger case. But it's more likely that she would not have discovered any evidence equivalent to the lost recording. As Target points out, Raemisch simply does not have the personal knowledge to say with certainty whether anyone else walked through the checkout lane. Dkt. 29, ¶ 10. And she does not have any more knowledge now than she did when she gave her prior statement. Besides Raemisch, the nearest Target employee was working at a register two aisles away, Dkt. 31, ¶ 17, and the preserved video recording shows that she was facing away from the lane with the puddle. Dkt. 26. So it's unlikely that her testimony would be any more useful.

The court concludes that Target did not take reasonable steps to preserve the recording of the lead-up to the fall and that the recording cannot be restored or replaced. The court next considers what remedy, if any, is appropriate under subsections (1) or (2).

### 3. Relief under Rule 37(e)(1)

The court may order a remedy under Rule 37(e)(1) if it concludes that Freidig is prejudiced by the loss of the video. The rule does not place the burden to prove prejudice on either party. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. But case

law suggests that Target has the burden to disprove prejudice because it violated its retention policy. *See Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428–29 (7th Cir. 2010) (citing *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002)) ("a violation of a record retention policy creates a rebuttable presumption that the missing record contained evidence adverse to the violator").

Even if Target has the burden, this does not mean that Freidig is automatically entitled to relief. The court must still determine the scope of the prejudice, and it cannot do so unless it has some idea about what the lost recording contained. Therefore, "the court must have some evidence regarding the particular nature of the missing ESI." *See Worldpay, US, Inc., v. Irina Haydon & Eunyt LLC*, No. 17-CV-4179, 2018 WL 5977926, at *5 (N.D. Ill. Nov. 14, 2018) (quoting *Snider*, 2017 WL 2973464, at *4); *Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, 2018 WL 1704109, at *3 (N.D. Ill. Mar. 23, 2018) (same). Put another way, the loss of inconsequential ESI, or detrimental ESI, does not entitle the other party to relief. So if evidence suggests that the lost recording would have helped Freidig's claim, then Freidig suffered prejudice. But if the evidence suggests that the lost recording would have been detrimental or inconsequential to Freidig's claim, then she did not.

In this case, the only evidence of the content of the missing video is Raemisch's statement, and it suggests that the missing video would have helped Freidig's claim. Raemisch said that she did not notice the puddle, and that to her knowledge, no one else walked through the area after she did. Target has no evidence at all to suggest that, contrary to Raemisch's statement, someone else made the puddle after Raemisch walked through. So the available evidence suggests that the lost recording would have been helpful to Freidig.

17

Relief under Rule 37(e)(1) must be "no greater than necessary to cure the prejudice." For example, in *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 627 (7th Cir. 2018), the defendant failed to preserve emails related to the plaintiff's discrimination claim, so an appropriate remedy was an order that the defendant could not contest the plaintiff's recollection of the emails. But the plaintiff was not entitled to a favorable ruling on the ultimate legal issue. Instead, the court adopted several of the plaintiff's proposed findings and then continued to analyze those findings within the larger context of the case. The court will follow that approach here.

Freidig is prejudiced because she cannot corroborate Raemisch's statement that no one walked through the area after Raemisch. So, for the purposes of summary judgment at least, the court will credit Raemisch's statement that she was the last person to walk through the area. Accordingly, the court concludes that Freidig has adduced sufficient evidence that the puddle was there for at least 10 or 15 minutes before Freidig's fall, and that the puddle was there when Raemisch walked through the area.

Under the safe-place statute, Target had constructive notice of the puddle if it existed "a long enough time for a reasonably vigilant owner to discover and repair it." *Megal*, 2004 WI 98, ¶ 12. This is typically a question of fact left to the jury, *id.* ¶ 20 n.2 (citing *Gerdmann by Habush v. U.S. Fire Ins. Co.*, 119 Wis. 2d 367, 350 N.W.2d 730, 733 (Ct. App. 1984)), and it includes considerations of "the surrounding facts and circumstances, including the nature of the business and the nature of the defect." Wis. Stat. § 101.11(1). Target has not shown that 15 minutes is not long enough to meet this standard or that Target missed the puddle despite procedures that were reasonably vigilant. So drawing all inferences in the light most favorable

to Freidig, a reasonable jury could conclude that Target had constructive notice of the puddle before Freidig's fall.

### 4. Relief under Rule 37(e)(2)

Freidig also requests sanctions under Rule 37(e)(2), specifically an instruction to the jury that it may presume that the deleted video was unfavorable to Target. Rule 37(e)(2) allows the court to grant this sanction only if it finds that Target deleted the footage with "the intent to deprive another party of the information's use in the litigation." This requires actual evidence of intent. An employee's destruction of evidence—even if in violation of company policy—is not necessarily a bad-faith act by the company. *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 873 (7th Cir. 2015).

Freidig does not adduce any evidence of Target's intent. Instead, she says that the court should require Target to produce the employee who preserved the video so that he or she can explain why Target's video preservation policy was not followed. But the moving party, here Freidig, has the burden of proving intent in a motion for sanctions based on spoliation of evidence. *See Norman-Nunnery*, 625 F.3d at 428; *Trask-Morton*, 534 F.3d at 681 (7th Cir. 2008). *See also Martinez v. City of Chicago*, No. 14-CV-369, 2016 WL 3538823, at *23 (N.D. Ill. June 29, 2016) (citing *Park*, 297 F.3d at 615) ("a violation of a records retention policy creates a rebuttable presumption that the missing evidence was unfavorable to the responsible party, but this does not eliminate the need to show bad faith in order to warrant the adverse inference instruction"). Because Freidig did not adduce any evidence of Target's intent, the court will deny her request for sanctions under Rule 37(e)(2).

**D. Conclusion**

The court concludes that Target prejudiced Freidig by failing to preserve video footage from prior to Freidig's fall. As a form of relief under Rule 37(e)(1), the court will credit, for the purposes of summary judgment, Raemisch's statement that no other person walked through the area between Raemisch and Freidig. Because a reasonable jury could conclude that the puddle was on the floor long enough to give Target constructive notice, and that Freidig's slip and fall injured her wrist, the court will deny Target's motion for summary judgment on Freidig's safe-place claim.

ORDER

IT IS ORDERED that:

1. Defendant Target Corporation's motion for summary judgment, Dkt. 15, is GRANTED in part. The court grants summary judgment as to plaintiff's negligence claim. The motion is DENIED as to the Wisconsin safe-place statute claim.

2. Plaintiff Carla Freidig's motion for relief under Federal Rule of Civil Procedure 37(e) is GRANTED in part. As relief under Rule 37(e)(1), the court will credit, for the purposes of summary judgment, Sarah Raemisch's statement that no other person walked through the area after Raemisch and before Freidig. The motion is DENIED as to Freidig's request for relief under Rule 37(e)(2).

Entered December 19, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge